**Merle Eugene PARKER, Appellant,**

v.

**C. W. LOWERY, Bill Butler, and
Jerald Fuller, Respondents.**

**No. 54232.**

Supreme Court of Missouri,
Division No. 2.

Nov. 10, 1969.

Merle Eugene Parker, in pro. per.

HENRY I. EAGER, Special Commissioner.

Plaintiff has appealed from a judgment dismissing his petition on motion; since the order was not made without prejudice, it constitutes a final judgment. Rule 67.03, V.A.M.R. The sole question is whether the petition states a claim upon which relief can be granted. Appellant has filed a brief pro se; respondents have filed none. We shall refer to appellant as the plaintiff and to respondents as the defendants.

Plaintiff concedes that his suit is unique and without precedent. In essence it is a suit for alleged damage to plaintiff and to the "moral tone of the community" arising from the operation of a gambling game at a carnival in Ava, Missouri, at the time of the County Fair. More specifically, plaintiff alleges: that his investment in a business and property in Ava gives him a "greater than average" interest in the welfare and moral tone of the community; that plaintiff learned that defendant Lowery was operating a game of chance and that certain residents had lost money there; that he went to the place on the evening of August 23, 1968, and participated in the game until he lost $29.00;

that the game consisted of placing 8 small balls or marbles in a shaker and tossing them into a box which had many shallow holes or depressions in the bottom, with a number on or under each hole; that the operator then added up the numbers which the balls hit, and made certain other computations; that when a certain total was obtained the prize (money or merchandise) was doubled and the cost of a roll also doubled; that plaintiff's cost per roll advanced from 25 cents to $4.00 in 10 minutes and apparently he won nothing; that plaintiff was accompanied by two minors; that, upon his information and belief, defendant Lowery owned and operated the carnival, and that he was a nonresident; that various minors participated in these games of chance and were solicited to do so by defendants; that defendants knew, "or by exercising reasonable care and diligence, should have known that they were operating a game of chance" in violation of § 563.370, RSMo 1959, V.A.M.S.; that defendants thus "flouted" the law openly and publicly, set an example for many hundreds of young persons, harmed the "moral tone of the community" and greatly damaged the plaintiff. For this he prayed $125,000 in general damages and $125,000 as punitive damages. At one point plaintiff alleged that the defendants operated four separate "games of chance" but only one is described, as above. The defendants other than Lowery were apparently employees. Plaintiff procured a writ of attachment and it was served; defendants then appeared and filed motions,—one to dissolve the attachment and one to dismiss the petition. Both were sustained. Our description of the gaming operation may not be entirely accurate, but this is immaterial to our decision.

Plaintiff does not sue to recover the $29.00 which he says he lost. He alleges nothing else, however, which may be considered as specific damage to him. He says in effect that he has been damaged because the "moral tone" of the community and of its youth has been damaged by a violation of the criminal law and that this may be measured in "dollars and cents." The points in plaintiff's brief, four in number, may all be considered together. Essentially he asserts: that any citizen of a community has a cause of action against one who openly violates the criminal law for profit, when such act or acts are seen or participated in by a substantial number of the people of the community; that every citizen has a responsibility to aid in the "administration of justice and in the enforcement of the laws"; that the courts should provide an impartial tribunal for hearing evidence thereof, offered by such citizens; and that, in the absence of a prohibitory statute, such an action as this will lie.

■ The statute to which plaintiff refers, § 563.370, declares it to be a felony for anyone to keep any gambling device and to induce or entice others to play at any such game or device. Plaintiff says that the game which he describes was operated in violation of that statute and we shall assume, for the purposes of this opinion, that it was. The issue therefore is: does such a violation of the criminal law give a civil right of action to a member of the public because, and solely because, of its supposed harmful effect upon the community? We have determined that it does not.

Plaintiff cites no authority even remotely in point. Of course we take as true, as he suggests, all facts well pleaded, with such reasonable inferences as may fairly be drawn therefrom. Hammond v. El Dorado Springs, 362 Mo. 530, 242 S.W.2d 479, 31 A.L.R.2d 1367; Westerhold v. Carroll, Mo., 419 S.W.2d 73. It is possible that the applicability of the theory of "pari dilecto" might well be considered here since the plaintiff states in his brief that "participating in any game of chance is a misdemeanor." However, we prefer to decide the issue on a more substantive ground.

■ In order for a plaintiff to maintain a civil action he must show a state of

facts which, as a matter of law, creates a right in him, an obligation on the defendant, and a default or breach by defendant. 1 Am.Jur.2d, Actions, §§ 1, 2, 46; 1 C.J.S. Actions § 1, p. 936, et seq. And, generally, a civil action is recognized as one for the enforcement or protection of a *private* right or for the redress of a *private* wrong. Pearson v. State, 159 Tex. 66, 315 S.W.2d 935; 1 C.J.S. Actions § 1, p. 944; Ballentine's Law Dict., 3rd Ed., p. 202. Thus, civil actions are expressly distinguished from criminal actions.

■ As we all know, crimes are punished by the state with elaborate statutory provisions fixing the procedure and the substantive law. It has frequently been said that a civil or remedial right of action does not arise from the violation of a criminal statute unless such an intent is expressed therein or clearly implied, and that generally such statutes are enacted for the benefit of the public only. 1 Am. Jur.2d, Actions, § 57; Beegle v. Thomson, CA7, 138 F.2d 875; Mezullo v. Maletz, 331 Mass. 233, 118 N.E.2d 356, 359; Johnson v. United States Steel Corp., 348 Mass. 168, 202 N.E.2d 816. The plaintiff says also that (upon his present theory) a private citizen should have a civil right of action for violation of the criminal laws involving narcotics, the sale of liquor to minors, or prostitution. We have found the case of Barboza v. Decas, 311 Mass. 10, 40 N.E.2d 10, which dealt with the sale of liquor to a minor in violation of statute. The minor became intoxicated and was arrested for assault with intent to commit rape. He pleaded guilty and went to prison. His father, who had received a portion of the minor's earnings, filed a civil suit for damages against the seller. The suit was in two counts, (1) because, and only because, of the violation of the statute; and (2) for negligence. The court held that the first count disclosed no cause of action since the statute did not provide, expressly or by clear implication, for a civil cause of action, or manifest any such legislative intent. On Count 2, the court denied recovery for the reason that the seller could not reasonably have anticipated that the minor would go out and commit a crime and that there was, therefore, no sufficient causal connection. A subsequent case, Adamian v. Three Sons, Inc., 353 Mass. 498, 233 N.E.2d 18, upheld a cause of action for negligence against a seller of liquor to an intoxicated person who thereafter drove his car on the public streets, killing one person and injuring another. That case, as we read it, proceeded solely on the theory of *negligence* and held that a violation of the statute could be some evidence of negligence. See also Rappaport v. Nichols et al., 31 N.J. 188, 156 A.2d 1. The present action is the very antithesis of a suit for negligence; it alleges that the defendants willfully "flouted" and violated the criminal statute to the detriment of the morals of the community and to plaintiff's detriment. It does not, in fact, purport to have its foundation in the common law at all.

The Missouri statute on gaming certainly does not provide, expressly or by clear implication, for a civil right of action. We are not considering a claim for the recovery of money lost in gaming for that is not the theory of this plaintiff. We have determined that the petition states no claim upon which relief may legally be based. This plaintiff had his remedy for any injury to the morals of the community by making a formal, criminal complaint and thus instituting a proceeding to be prosecuted by the state. He may not take the criminal law into his own hands. He says in his brief that he filed "an affidavit as a witness to the commission of a felony" in the Magistrate's Court, on August 26, 1968, but that was after the carnival had concluded its run (according to his petition) and it does not appear that the affidavit constituted or was intended as a legal complaint. Plaintiff argues at length the "breakdown in law and order" and says that his share in this is measurable in dollars and cents. Under these circumstances it is not. If every citizen were held to have a right of action for civil damages because of violations of the crim-

inal law which were detrimental to the public interest, we would have utter chaos in our courts. The duty of the citizen is to report such crimes and to make formal complaint, if he feels it to be his duty.

We do not hesitate to expand accepted common-law doctrines where necessary. State v. Kollenborn, Mo.Banc, 304 S.W.2d 855. But we do not invent new causes of action which are not justified by recognized legal principles, nor may we extend the interpretation of our criminal statutes beyond the obvious legislative intent.

The plaintiff has done a creditable job of presenting his theory pro se, but we are fully convinced that he has no cause of action. The judgment of dismissal is affirmed.

PER CURIAM.

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.